# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAINT ZOOM, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>GROUPON, INC.,<br><br>      Defendant. | Civil Action No. 1:17-cv-8950<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. Infringement of Design Patent No. D639,387<br>2. Copyright Infringement<br>3. Trade Dress Infringement<br>4. Unfair Competition (Cal. Bus. & Prof. Code § 17200)<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT, COPYRIGHT INFRINGEMENT, TRADE DRESS INFRINGEMENT, AND UNFAIR COMPETITION

Plaintiff Paint Zoom, LLC ("PZ" or "Plaintiff"), brings this complaint against Defendant Groupon, Inc. ("Groupon" or "Defendant") for patent infringement, copyright infringement, trade dress infringement, and unfair competition. Plaintiff alleges as follows:

### NATURE OF ACTION

1. Plaintiff has been forced to bring this action seeking to put an immediate stop to, and to obtain redress for, Defendant's blatant and purposeful infringement of Plaintiff's rights in and to Plaintiff's "Paint Zoom" product. Ignoring the many chances provided by Plaintiff, Defendant has not only failed to cease and desist from their unlawful activity, they have increased the harm to Plaintiff by "dumping" counterfeit and inferior products.

## **JURISDICTION**

2. This action arises under the laws of the United States, including the Patent Laws, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, 285 and 289. This action also arises under the Copyright Act of the United States, 17 U.S.C. § 101 *et seq*. This action also arises under the Lanham Act (15 U.S.C. § 1051 *et seq.*). This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1338(a), and 1367.

3. The Court has personal jurisdiction over Defendant because: Defendant has minimum contacts within the State of Illinois and in the Northern District of Illinois; Defendant has purposefully availed itself of the privileges of conducting business in the State of Illinois and in the Northern District of Illinois; Defendant has sought protection and benefit from the laws of the State of Illinois; Defendant regularly conducts business within the State of Illinois and within the Northern District of Illinois, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Illinois and in the Northern District of Illinois.

4. More specifically, Defendants, directly and/or through authorized intermediaries, make, sell, offer to sell, distribute, import and/or use products and services in the United States, the State of Illinois, and the Northern District of Illinois as described more fully below, and which products and services are infringing Plaintiff's rights. Upon information and belief, Defendants have committed patent infringement, trade dress infringement, and copyright infringement and engaged in acts constituting unfair competition in the State of Illinois and in the Northern District of Illinois.

5. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391 and/or 1400(a) and (b).

## PARTIES

6. PZ is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 14724 Ventura Boulevard, Suite 200, Sherman Oaks, California 91403.

7. On information and belief, Groupon is a corporation organized and existing under the laws of the State of Delaware with its principle place of business at 600 W. Chicago Ave., Suite 400, Chicago, Illinois 60654.

## FACTUAL ALLEGATIONS

### *Background*

8. PZ is an affiliate of Ideal Living Management, LLC ("ILM"). ILM is a vertically integrated multi-channel marketer of consumer products specializing in direct response television advertising (DRTV), internet and retail sales. Dedicated to selling better products for a better life through a family of brands, ILM has been successfully conducting business through DRTV and retail since 1993 and is responsible for worldwide sales of products in excess of $3 billion.

9. "Paint Zoom" was created by Actervis GmbH, which, with its affiliate, Industex S.L., sought to commercialize "Paint Zoom" through an exclusive licensing program, summarized below (collectively, "Actervis" and "Industex" are referred to herein as "Licensor").

10. In May, 2010, PZ entered into a "Product And Infomercial License Agreement Paint Zoom" with Licensor, whereby PZ obtained, *inter alia*, exclusive rights to manufacture, promote and sell a power paint sprayer named "Paint Zoom" in the United States. The May 2010 license was replaced by an October 2012 license of the same name that amended and restated the exclusive license to PZ (the "Exclusive License"). The Exclusive License grants PZ exclusive rights to the intellectual property described hereinbelow (the "PZ Intellectual Property"). At various times from May, 2010 to the present, PZ and Licensor have amended

and restated the terms of PZ's exclusive license, however, PZ's exclusive rights in and to the PZ Intellectual Property has continued, uninterrupted, at all times relevant hereto.

11. As a result of PZ's extensive and ongoing advertising campaign, Plaintiff's distinctive "Paint Zoom" product has been extremely successful, generating sales of hundreds of thousands of units representing tens of millions of dollars in sales from 2010 to the present. On information and belief, beginning in 2014, recognizing the popularity, and in a brazen and improper effort to capitalize on Plaintiff's hard-earned success, Defendant began selling counterfeit "Paint Zoom" products.

### *The PZ Intellectual Property*

12. On October 12, 2010, Licensor applied for a design patent for the ornamental design for a paint spray system, which issued as US D639,387 on June 7, 2011 (the "'387 patent" or the "patent-in-suit"). Attached as Exhibit A is a true and correct copy of the patent-in-suit. By virtue of provisions in the Exclusive License, PZ is the exclusive licensee of the '387 patent and has the exclusive right to enforce such patent against all infringers.

13. In addition to PZ's common law rights, on September 8, 2015, Licensor obtained federal registration of a copyright for the "Paint Zoom Packaging," Registration Number 8-217-125 (the "First Copyright"). A true and correct copy of Plaintiff's notice of issuance is attached hereto as Exhibit B. Under the Exclusive License, PZ is the exclusive licensee of the First Copyright.

14. In addition to PZ's common law rights, on May 30, 2017, Licensor filed an application for federal registration of a copyright for the "Paint Zoom Instruction Manual" (the "Second Copyright"). A true and correct copy of Plaintiff's application is attached hereto as Exhibit C. Under the Exclusive License, PZ is the exclusive licensee of the Second Copyright.

*Defendant's Infringing Activity*

15. In October, 2015, Plaintiff obtained counterfeit "Paint Zoom" products directly from Groupon. When they were delivered, the products were packaged in PZ's copyrighted, Paint Zoom Packaging. The packaging identified the product as "iMounTEK." The design of the product was identical to PZ's design. In addition, Groupon used PZ's manual, with the only change being the removal of the name "Paint Zoom."

16. On information and belief, in October, 2015, Plaintiff's broker contacted Groupon and informed them of the counterfeit products. In communications over the next several months, PZ learned that Groupon was refusing to take down the counterfeit products unless Plaintiff beat the pricing provided to Groupon by its supplier.

17. Thereafter, in March, 2016, PZ contacted Groupon directly and notified it that PZ is the owner/maker of Paint Zoom; that PZ was authorized to enforce the Paint Zoom copyrights, patent, and trademarks; that Groupon's listing violated PZ's intellectual property rights, including the following:

> The box packaging of this knock-off has our exact copyright images, design, text, etc., and they [the supplier] simply replaced the words "Paint Zoom" with "Mount Tek." As well, it has our exact manual (design, images, drawings, text) and again they just replaced the words "Paint Zoom" with "Mount Tek." This is a counterfeit that should be removed right away.

In response, Groupon informed PZ that they "pulled this [product] off the site the day you alerted us." This was again confirmed by Groupon in an email dated March 29, 2016.

18. Nevertheless, after discovering continuing sales, on May 9 and June 8, 2017, PZ again demanded in writing that Groupon cease and desist from selling

the infringing products. Groupon has sold the product recently, as is evidenced by PZ's purchase of an infringing product in August, 2017. On information and belief, Groupon has been "dumping" the product and driving the price down for legitimate PZ products. As can be seen from Groupon's website, below, Groupon's current sales price is discounted by 63% from Plaintiff's own established retail pricing to generate more than 10,000 sales of counterfeit products.



## FIRST CAUSE OF ACTION
### (Infringement of Design Patent)

19. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 18 inclusive, as if fully set forth herein.

20. The '387 patent was duly and legally issued by the United States Patent and Trademark Office on June 7, 2011. Plaintiff is the exclusive licensee of the '387 patent and possesses all substantive rights and rights of recovery under

the '387 patent, including the right to sue for infringement and recover past damages.

21.     Defendant has infringed and continues to infringe, pursuant to 35 U.S.C. §§ 271 and 289, the '387 patent by manufacturing, selling and/or offering to sell in the United States paint sprayer products which copy the design covered by the '387 patent.  Specifically, the counterfeit iMounTEK product incorporates several elements covered by the patent-in-suit, including but not limited to the paint machine, hose pipe, carrying belt, paint container/reservoir, paint spray gun, viscosity measuring cup.  The paint sprayers are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase iMounTEK products believing them to be substantially the same as the paint sprayer design protected by the '387 patent. A comparison of the infringing products with the patented design is provided below:

*Plaintiff's '387 Patent, Figure 1*



FIG. 1

*Icy Deals Sale Of Global Phoenix Sprayer*



*Groupon Sale of Global Phoenix Sprayer*



22. Defendant's aforesaid activities have been with actual notice of the '387 patent, and without authority and/or license from Plaintiff.

23. Plaintiff will be irreparably injured by Defendant's continued patent infringement, in a manner which may be difficult or impossible to quantify, unless enjoined by this Court. Plaintiff has no adequate remedy at law for this ongoing injury. Plaintiff therefore seeks a preliminary and permanent injunction, pursuant to 35 U.S.C. §283, to prohibit Defendant from any further infringement of the '387 patent.

24. As a result of Defendant's infringement, and in addition to injunctive relief, Plaintiff is entitled to damages in an amount no less than a reasonable royalty for the use made of the invention by Defendant, plus interest and costs. Plaintiff is also entitle to Defendant's profits, pursuant to 35 U.S.C. § 289.

25. In addition, because Defendant has willfully infringed the '387 patent with both knowledge and notice of Plaintiff's rights, and with the intent to infringe those rights, Plaintiff is entitled to increased damages of three times the damages assessed pursuant to 35 U.S.C. § 285, and attorneys' fees pursuant to 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION
### (Copyright Infringement)

26. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 inclusive, as if fully set forth herein.

27. Through its exclusive license, PZ owns the rights to the First Copyright, the copyright for the "Paint Zoom®" product packaging, including the following:



28. Defendant has infringed the First Copyright by directly copying images (*e.g.*, red arrow) from Plaintiff's packaging. For example, the following packaging including images taken directly from the First Copyright, was used by Defendant:

| PaintZoom First Copyright | iMounTEK's Counterfeit Packaging |
|---|---|
| | |

29. In addition, Plaintiff also owns the rights to a copyright (the Second Copyright) to the "Paint Zoom® Instruction Manual."

30. Defendant has infringed the Second Copyright by directly copying Plaintiff's copyrighted instruction manual.

31. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with interference to, the rights of Plaintiff.

32. As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 505.

33. The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause, Plaintiff irreparable injury, for which Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyrights and ordering that Defendant destroy all unauthorized copies of the PZ packing and product manuals.

## THIRD CAUSE OF ACTION

### (Trade Dress Infringement)

34. Plaintiff repeats and incorporate by reference the allegations contained in paragraphs 1 through 33 inclusive, as if fully set forth herein.

35. Plaintiff owns the design of the Paint Zoom product as trade dress.

36. Plaintiff's Paint Zoom design, including but not limited to the total image of the product incorporating features such as size, shape, color combinations, texture, and/or graphics and/or the Paint Zoom product packaging (the "Design"), is distinctive. Consumers have come to associate the Design of the Paint Zoom product only with Plaintiff.

37. The Design of the Paint Zoom product and packaging is nonfunctional.

38. Defendant used trade dress similar to the Design of the Paint Zoom product and packaging without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Defendant's goods.

39. As a direct and proximate result of Defendant's conduct, Plaintiff is entitled, pursuant to 15 U.S.C. § 1117(a), to recovery of: (i) Defendant's profits related to all uses of Plaintiff's trade dress; (ii) any damages sustained by Plaintiff as a result of Defendant's conduct, the precise amount of which shall be established by Plaintiff at trial; and (iii) the costs of this action.

40. In addition, Plaintiff will be irreparably injured by Defendant's continued trade dress infringement, in a manner which may be impossible to quantify, unless enjoined by this Court. Plaintiff has no adequate remedy at law for this ongoing injury. Plaintiff therefore seeks a preliminary and permanent injunction to prohibit Defendant from any further use of Plaintiff's trade dress without Plaintiff's express written consent in advance.

41. Defendant has willfully poached Plaintiff's trade dress, have admitted awareness of Plaintiff's Paint Zoom Design, and have advertised their infringing product as their "version" of Plaintiff's Paint Zoom Design. Given these exceptional circumstances of flagrant and willful infringement, Plaintiff requests treble damages, judgment for a sum this Court finds to be just, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

## FOURTH CAUSE OF ACTION
### (Unfair Competition Cal. B&PC § 17200)

42. Plaintiff repeats and incorporate by reference the allegations contained in paragraphs 1 through 43 inclusive, as if fully set forth herein.

43. Defendant's acts described above constitute unfair competition in violation of California Business & Professions Code § 17200 et seq., as they are unlawful, fraudulent, unfair, misleading and likely to deceive the public regarding the design, origin and quality of the goods.

44. As a result of Defendant's acts of unfair competition, Plaintiff is entitled to restitution of the profits and other ill-gotten gains by Defendant from Defendant's infringement of the '387 patent, and infringement of Plaintiff's copyrights, and trade dress.

45. Plaintiff are also entitled to injunctive relief pursuant to California Business & Professions Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

a. For entry of a permanent injunction enjoining Defendant and its respective officers, directors, agents, and employees and all those in concert or participation with them who receive notice of judgment by personal service or otherwise, from:

      (i) Making, importing, using, selling, and offering to sell infringing products practicing the '387 patent and from otherwise infringing, contributing to infringement of, and actively inducing infringement of the '387 patent; and

      (ii) Holding out in any manner whatsoever that its paint sprayer products, such as "iMounTEK," are in any way sponsored, approved, sourced, certified, affiliated, connected or associated with Plaintiff, or Plaintiff's products.

b. A judgment and order that Defendant deliver to Plaintiff for destruction all iMounTEK products, molds, sales literature, and other trade pieces used in the infringement of the '387 patent.

c. A judgment and order that Defendant make an accounting to Plaintiff and pay over to Plaintiff:

      (i) The extent of Defendant's total profit and revenue realized and derived from its infringement of the '387 patent, and actual damages to Plaintiff in an amount not less than a reasonable royalty for Defendant's infringement;

      (ii) All damages suffered by Plaintiff; and

      (iii) Treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful and deliberate infringement.

d. For an award of Defendant's profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(c);

e. For an award of Defendant's profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §504(b);

    f. In the alternative to actual damages and Defendant's profits for the infringement of Plaintiff's copyrights, for statutory damages pursuant to 17 U.S.C. §504(c), which election Plaintiff will make prior to final judgment;

    g. For an award of Plaintiff's actual damages in an amount to be proven at trial for deceptive trade practices pursuant to Cal. B&PC § 17200;

    h. For a judgment for restitution of Defendant's profits and ill-gotten gains acquired through its acts of unfair competition.

    i. Preliminarily and permanently enjoining Defendant and its agents, employees, officers, directors, owners, representatives, successor companies, affiliates, subsidiaries and related companies, and all persons acting in concert or participation with it, and each of them, from:

        (i) The import, export, making, manufacture, reproduction, assemble, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing, advertising or promotion of the infringing and diluting products identified in the Complaint and any other product which infringes or dilutes any of Plaintiff's copyrights, intellectual property, trademarks, trade name and/or trade dress including, but not limited to, Plaintiff's marks at issue in this action.

        (ii) The unauthorized use, in any manner whatsoever, of any of Plaintiff's copyrights, intellectual property, trademarks, trade names and/or trade dress including, but not limited to, Plaintiff's marks at issue in this action, any variants, colorable imitations, translations, and/or simulations thereof

    and/or any items that are confusingly similar thereto, including specifically:

1. On or in conjunction with any product or service; and
2. On or in conjunction with any advertising, promotional materials, labels, hangtags, packaging or containers.

(iii) The use of any Plaintiff's copyrights, intellectual property, trademark, trade name, or trade dress that falsely represents, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public to believe that unauthorized product imported, exported, manufactured, reproduced, distributed, assembled, acquired, purchased, offered, sold, transferred, brokered, consigned, distributed, stored, shipped, marketed, advertised and/or promoted by Defendant originate from Plaintiff, or that said merchandise has been sponsored, approve, licensed by, or associated with Plaintiff or is in some way, connected or affiliated with Plaintiff.

(iv) Engaging in any conduct that falsely represents that, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public to believe that Defendant is connected with, or are in some way sponsored by or affiliated with Plaintiff, purchases product from or otherwise have a business relationship with Plaintiff.

(v) Affixing, applying, annexing, or using in connection with the manufacture, distribution, advertising, sale, and/or offering for sale or other use of any goods, a false description or representation, including words or symbols,

          (vi)    tending to falsely describe or represent such goods as being those of Plaintiff.

          (vi)    Hiding, disposing of, destroying, moving, relocating or transferring any and all products, advertising, promotional materials, labels, hangtags, packaging or containers bearing any of Plaintiff's trademarks or which otherwise refer or relate to Plaintiff or any of Plaintiff's marks.

j. For an order directing Defendants to file with the court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant complied with the injunction.

k. For an order from the Court requiring Defendant to provide complete accountings and for equitable relief, including that Defendant disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amounts of monies that should have been paid if Defendant complied with their legal obligations, or as equity requires.

l. For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendant's possession which rightfully belong to Plaintiff;

m. For an award of exemplary or punitive damages in an amount to be determined by the Court.

n. Attorney's fees and costs of suit incurred herein;

o. Interest thereon as permitted by law; and

p. Such other and further relies as the Court may deem just and proper.

Dated: December 13, 2017 Respectfully submitted,

/s/ Mark R. Miller
Mark R. Miller
**WEXLER WALLACE LLP**
55 West Monroe, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: mrm@wexlerwallace.com

*Liaison Counsel for Plaintiff Paint Zoom, LLC*

Steven W. Ritcheson, *Pro Hac Vice Anticipated*
**INSIGHT, PLC**
9800 D Topanga Canyon Blvd. #347
Chatsworth, California 91311
Telephone: (818) 882-1030
Facsimile: (818) 337-0383
Email: swritcheson@insightplc.com

*Attorneys for Plaintiff Paint Zoom, LLC*